# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MALLINCKRODT PLC, *et al.*,<br><br>              Debtors.[1] | Chapter 11<br>Case No. 20-12522 (JTD) (Bankr. D. Del.)<br>(Jointly Administered) |
| ATTESTOR LIMITED and HUMANA INC.,<br><br>              Appellants,<br><br>v.<br><br>MALLINCKRODT, PLC, *et al.*,<br><br>              Appellees. | C.A. No. 1:21-cv-01780-LPS |

## DEBTORS' OPPOSITION TO APPELLANTS' MOTION TO CERTIFY A DIRECT APPEAL

Dated: February 18, 2022

Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:    collins@rlf.com
          merchant@rlf.com
          steele@rlf.com
          schlauch@rlf.com

- and -

Melissa Arbus Sherry (*pro hac vice*)
James A. Tomberlin (*pro hac vice*)
Andrew Sorkin (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:    (202) 637-2200
Facsimile:    (202) 637-2201
Email:    melissa.sherry@lw.com
          james.tomberlin@lw.com
          andrew.sorkin@lw.com

- and -

---

[1] A complete list of the Debtors in these Chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://restructuring.primeclerk.com/Mallinckrodt. The Debtors' mailing address is 675 McDonnell Blvd., Hazelwood, Missouri 63042.

George A. Davis (*pro hac vice*)
George Klidonas (*pro hac vice*)
Anupama Yerramalli (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone:     (212) 906-1200
Facsimile:     (212) 751-4864
Email:         george.davis@lw.com
               george.klidonas@lw.com
               andrew.sorkin@lw.com
               anu.yerramalli@lw.com

- and -

Matthew W. Wolf (pro hac vice)
Laura S. Shores (*pro hac vice*)
Sonia Kuester Pfaffenroth (*pro hac vice*)
**ARNOLD & PORTER
  KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC
T: (202) 942-5000

- and -

D. Eric Shapland (*pro hac vice*)
**ARNOLD & PORTER
  KAYE SCHOLER LLP**
777 South Figueroa St., 44th Floor
Los Angeles, California
T: (213) 243-4000

2

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ................................................................................................6

BACKGROUND ..................................................................................................................9

ARGUMENT ....................................................................................................................13

    I.     There Is Controlling Third Circuit Precedent ..........................................................13

          A.     The Bankruptcy Court Applied Controlling Third Circuit Law ...............14

          B.     Attestor's Arguments To The Contrary Fail ..............................................15

    II.    No Conflicting Decisions Require Resolution By The Third Circuit ....................18

    III.   Public Importance Considerations Do Not Warrant Direct Appeal......................19

    IV.   Direct Appeal Will Not Materially Advance The Progress Of The Case .............20

CONCLUSION ..................................................................................................................22

CASES

*In re Aerogroup Int'l, Inc.*,
    No. 17-11962 (CSS), 2020 WL 757892 (D. Del. Feb. 14, 2020) ...........................8, 19, 20, 21

*In re Am. Home Mortg. Inv. Corp.*,
    408 B.R. 42 (D. Del. 2009) ...................................................................................................21

*Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...............................................................................................................14

*City of Pittsburgh v. West Penn Power Co.*,
    147 F.3d 256 (3d Cir. 1998)............................................................................... *passim*

*In re Conex Holdings*,
    534 B.R. 606 (D. Del. 2015) ............................................................................................9, 20

*In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*,
    No. 12-cv-711, 2013 WL 812143 (D.N.J. Mar. 5, 2013) ......................................................18

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) .......................................................................................18

*Meijer, Inc. v. Biovail Corp.*,
    533 F.3d 857 (D.C. Cir. 2008) .......................................................................................15, 17

*In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*,
    Nos. 06-cv-52, 06-cv-71, 2010 WL 1485328 (D. Del. Apr. 13, 2010) ..................................18

*In re Microsoft Corp. Antitrust Litig.*,
    699 F. Supp. 2d 730 (D. Md. 2010) .......................................................................................17

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    842 F.3d 34 (1st Cir. 2016) ...................................................................................................15

*Perrigo Co. v. AbbVie Inc.*,
    No. 2:20-cv-17560, 2021 WL 4551397 (D.N.J. Sept. 30, 2021)...........................................18

*In re Physiotherapy Holdings, Inc.*,
    No. 16-201-LPS, 2017 WL 6524524 (D. Del. 2017)...............................................8, 9, 13, 14

*Roxane Lab'ys, Inc. v. SmithKline Beecham Corp.*,
    No. 09-cv-1638, 2010 WL 331704 (E.D. Pa. Jan. 26, 2010)..................................................18

*Roxul USA, Inc. v. Armstrong World Indus., Inc.*,
    No. 1:17-cv-01258, 2019 WL 1109868 (D. Del. March 8, 2019) ....................................18, 19

*Shionogi Pharma, Inc. v. Mylan, Inc.*,
    No. 10-cv-1077, 2011 WL 3860680 (D. Del. Aug. 31, 2011) ................................................18

*United States v. Dentsply Int'l, Inc.*,
    399 F.3d 181 (3d Cir. 2005) .................................................................................................19

*United States v. Microsoft Corp.*,
    253 F.3d 34 (D.C. Cir. 2001) (en banc) ..........................................................................17, 21

*Weber v. United States*,
    484 F.3d 154 (2d Cir. 2007).................................................................................................21

*In re Wellbutrin XL Antitrust Litigation*,
    868 F.3d 132 (3d Cir. 2017).......................................................................................... *passim*

## STATUTES

28 U.S.C. § 158(d)(2)(A).............................................................................................................13

28 U.S.C. § 158(d)(2)(A)(i) .............................................................................................7, 8, 15, 19

28 U.S.C. § 158(d)(2)(A)(ii) .................................................................................................8, 18

28 U.S.C. § 158(d)(2)(A)(iii) .......................................................................................................8

The debtors in possession in the above-captioned cases (collectively, "Debtors") respectfully submit this Opposition to Attestor's[2] Motion to Certify a Direct Appeal, dated February 4, 2022 [D.I. 12] (the "Motion" or "Mot."). Attestor seeks to certify a direct appeal to the Third Circuit of the Bankruptcy Court's Order dated December 12, 2021 [Bankr. D.I. 5886] ("Order").[3]

## PRELIMINARY STATEMENT

This appeal follows a two-week trial during which the parties presented extensive evidence regarding Attestor's claims under the Sherman Act and the Racketeer Influenced & Corrupt Organizations (RICO) Act. Based on the evidence presented, the Bankruptcy Court found that Attestor failed to meet its burden on either claim. In its Motion, Attestor addresses a single issue: whether the Bankruptcy Court "appl[ied] the incorrect legal standard for antitrust standing or causation." D.I. 3 at 2. That issue does not warrant certification.

Attestor's antitrust claims rest on allegations that Debtors' 2013 acquisition of Synacthen Depot (Synacthen), a potential synthetic competitor to their naturally derived drug Acthar® Gel (Acthar), constituted illegal maintenance of a monopoly. After trial, the Bankruptcy Court concluded that Attestor failed to prove any antitrust injury to the Acthar purchasers who had assigned their claims to Attestor because it was the rigorous FDA approval process, not Debtors' acquisition of Synacthen, that prevented Synacthen or other synthetic ACTHs from entering the alleged market. Specifically, the evidence showed that Synacthen could not enter the market without FDA approval; that multiple companies had sought approval for synthetic ACTH drugs

---

[2] This Opposition, like the Motion, refers to Attestor Limited; Avon Holdings I, LLC; and Humana Inc. collectively as "Attestor." *See* Mot. 1 n.2.

[3] "D.I." refers to the docket in this appeal. "Bankr. D.I." refers to the docket of the main Chapter 11 Case, Case No. 20-12522 (JTD).

equivalent to Synacthen before eventually giving up due to the substantial difficulties relating to clinical trials; that Debtors acquired their rights to Synacthen from a firm (Novartis) that had elected not even to seek approval; that five years ago, Debtors sublicensed their rights at the FTC's direction to another firm approved by the FTC and that firm *still* has not obtained approval for Synacthen; that nearly two years ago, Debtors notified Novartis that they were unilaterally and permanently suspending all their remaining rights to develop Synacthen; and that the rights to Synacthen (which had no intellectual property protection other than its name) did not prevent competitors from developing identical synthetic ACTH drugs to compete with Acthar (which more than one did, before also abandoning those efforts without obtaining FDA approval). The Bankruptcy Court's factual findings flowed from its straightforward application of Third Circuit precedent to this overwhelming evidence.

Attestor asserts that the Bankruptcy Court applied the wrong standard, and that uncertainty as to the applicable standard warrants direct review in the Third Circuit. Neither assertion holds up. While Attestor suggests that the Bankruptcy Court required it to prove that a competitor "drug would have *definitely* received FDA approval in a hypothetical world" to demonstrate antitrust standing, Mot. 8 (emphasis in original), the word "definitely" appears nowhere in the Order. And the existence of two "controlling decision[s]" adopting the legal standard *actually* applied by the Bankruptcy Court defeats Attestor's main argument for certification. 28 U.S.C. § 158(d)(2)(A)(i).

The Third Circuit held in *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998) and *In re Wellbutrin XL Antitrust Litigation*, 868 F.3d 132 (3d Cir. 2017) that regulatory barriers can break the chain of causation and defeat antitrust injury. *West Penn* and *Wellbutrin* applied general causation principles to hold that an antitrust plaintiff must demonstrate by a preponderance of the evidence that regulatory approval "*would* have" been granted. *Wellbutrin*,

868 F.3d at 167. The Bankruptcy Court simply applied this "more likely than not" standard from *West Penn* and *Wellbutrin*. Order 21. And while Attestor claims (at 9) that the Bankruptcy Court "implicitly acknowledge[d] there is no controlling decision" because it addressed and distinguished case law from the D.C. Circuit, the court addressed that case only because *Attestor* attempted to rely on it.

Attestor's assertion that certification is needed for "resolution of conflicting decisions" by district courts is similarly meritless. 28 U.S.C. § 158(d)(2)(A)(ii). Attestor points to a few cases that declined to apply *West Penn*, but the Third Circuit resolved any questions about the scope of that decision in *Wellbutrin*. Because Attestor does not (and cannot) identify any conflicting decision in the five years since *Wellbutrin*, there is no live conflict for the Third Circuit to resolve.

The remaining factors do not support certification either. "Courts have interpreted the 'public importance' prong of 28 U.S.C. § 158(d)(2)(A)(i) narrowly." *In re Aerogroup Int'l, Inc.*, No. 17-11962 (CSS), 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020). A case (like this one) that involves the application of controlling law to fact-intensive, record-dependent issues does not satisfy that requirement. Attestor claims the underlying conduct that forms the basis of Attestor's allegations "implicate[s] the public interest" (at 14), but the FTC already investigated Debtors' conduct—and, in 2017, settled all claims arising out of that conduct in exchange for Debtors agreeing to pay a fine and sublicense Synacthen to a competitor (both of which Debtors did).

Finally, a direct appeal will not "materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A)(iii). Factual issues will abound on appeal and the issue presented for certification is not even outcome-determinative. *See In re Physiotherapy Holdings, Inc.,* No. 16-201-LPS, 2017 WL 6524524, at *13 (D. Del. 2017). Attestor's challenge to the Bankruptcy Court's weighing of evidence will require analysis of the entire two-week trial record. And that evidence is sufficient

to conclude that Attestor cannot show antitrust injury *under any standard*, meaning resolution of the single issue Attestor addresses in its Motion will not resolve the case. Attestor has failed to demonstrate any "extraordinary or urgent" situation "that recommends departing from the standard appellate process." *In re Conex Holdings*, 534 B.R. 606, 611 (D. Del. 2015).

The Court should deny the Motion.

## BACKGROUND

### A. Acthar and Synacthen

Acthar is a naturally derived ACTH product, and no generic or non-name brand version exists. Order 2-3. Questcor acquired Acthar in 2001. *Id.* at 3. Synacthen is a synthetic ACTH compound, which has only some properties similar to Acthar. The FDA has not approved Synacthen or any other synthetic ACTH product for therapeutic use in the United States. *Id.* Novartis held the rights to Synacthen and considered developing it as a competitor to Acthar, before deciding that developing the drug would be too costly and time-consuming. *Id.* at 4. When Novartis auctioned the rights to Synacthen, Questcor bid and prevailed. *Id.*

Debtors then acquired Questcor. *Id.* at 6. While Debtors expressed some concern that a launch of Synacthen might compete with Acthar, *see id.* at 11, Debtors' diligence for the acquisition included a report from investment banker Barclay's, which "noted that 'Acthar is not protected by any patents . . . but multiple barriers to entry related to formulation, manufacturing and regulatory make generic synthetics competition less likely,'" *id.* at 5 (citation omitted). Debtors worked to develop Synacthen, but it became clear there were problems associated with the drug's active pharmaceutical ingredient and manufacturing (requiring a new manufacturer), which would need to be resolved before the FDA approval process could begin. *Id.* at 7. Debtors nevertheless proceeded with the development process until insurmountable difficulties in enrolling patients for the FDA-required clinical trials forced them to abandon the project. *Id.* at 11. In July

2020, "Debtors notified Novartis that they were unilaterally and permanently suspending all remaining rights to develop Synacthen." Order 11-12.

Synacthen has no intellectual property protection and its active ingredient is relatively easy to reproduce. While Debtors were pursuing approval for Synacthen, competitors began work on bringing a different synthetic ACTH product to market. *Id.* at 9. After roughly a year spent formulating its own synthetic ACTH product and manufacturing initial batches, one potential competitor (Retrophin) sought FDA approval of its product—only to abandon the project at the clinical trial stage, as Debtors had. *Id.* Another potential competitor (Marathon/West) likewise worked on a synthetic ACTH product. *Id.* at 10. And in 2017, at the FTC's direction, Debtors granted Marathon/West a royalty-free sublicense to Synacthen and all the Synacthen assets that Debtors received from Novartis. *Id.* After the FDA informed Marathon/West of problems with its application, the company abandoned its attempts to bring Synacthen or any other synthetic ACTH product to market. *Id.* at 10-11. Nearly five years have now passed since Marathon/West acquired the sublicense to Synacthen, and still the FDA has not approved that drug (or any other synthetic ACTH product) for any therapeutic indications.

### B. Proceedings Below

Before Debtors filed for Chapter 11 bankruptcy, certain parties (including Appellant Humana, Inc.) sued Debtors over the price of Acthar. After Debtors initiated these bankruptcy proceedings, Attestor filed proofs of claims for prepetition purchases of Acthar and for administrative expenses based on postpetition purchases, alleging violations of the federal antitrust laws, the RICO Act (among other laws), and state laws. Order 1-2.

Debtors objected to Attestor's administrative expense claims,[4] and the Bankruptcy Court conducted a two-week bench trial on the validity of those claims, where the parties presented "extensive evidence." *Id.* at 2. At the end of the trial, the Bankruptcy Court concluded that Attestor "failed to meet [its] burden of proof on" its antitrust and RICO Act claims, and had abandoned its state-law claims. *Id.* at 2, 24-25, 34.

On the antitrust claims, the Bankruptcy Court held that Attestor "failed to carry [its] burden of proving a but for connection between the Debtors' conduct and [its] alleged injury" and thus failed to establish antitrust standing. *Id.* at 19. Specifically, the court found that Attestor "failed to present evidence sufficient to support a conclusion that but for Debtors' acquisition of the Synacthen Assets a competitor would have developed either Synacthen or another long-lasting synthetic ACTH product that could compete against Acthar." *Id.* at 24. The court recognized that "Debtors presented evidence at trial, through . . . expert testimony . . . as well as the testimony of Mallinckrodt executives, that FDA regulatory requirements created significant barriers to the entry of Synacthen, or any other long-acting synthetic ACTH drug, into the market." *Id.* at 21. That testimony, the court explained, was corroborated by documents demonstrating a long history of efforts to develop Synacthen and other synthetic ACTH products and their failures in meeting FDA approval requirements, both with respect to the manufacturing process and clinical trials. *Id.* at 21-22. The court pointed further to "[t]he evidence at trial suggest[ing] that getting beyond the clinical trial stage of the FDA approval process is so difficult that the other manufacturers who sought approval of a synthetic ACTH product either also tried and failed at this stage or only sought approval in a manner that would avoid it entirely." *Id.* at 22.

---

[4] Attestor's prepetition claims were largely disallowed for lack of substantiation. Bankr. D.I. 3406. Those claims are the subject of a separate appeal that has been fully briefed and is pending in this Court. *See* Case No. 21-cv-01093-LPS.

The Bankruptcy Court also noted that Debtors had "presented evidence to refute [Attestor's] allegations that it was the Debtors' possession of the Synacthen rights that prevented or delayed the entry of a synthetic ACTH product to the market." *Id.* at 23. The evidence showed that "there was no IP protection for Synacthen and it was relatively easy to reproduce" even without the Synacthen assets—as "at least two other companies" did (before ultimately abandoning efforts to obtain FDA approval). *Id.* at 23. The court found "persuasive" the admission by Attestor's expert that, in light of "the rigorous FDA approval process," the expert could conclude only that Synacthen "*could have* been approved for diagnostic use and not that it *would have* been approved," citing "other considerations, including whether the development of synthetic ACTH would make business sense." *Id.* And the court noted that even after obtaining the rights to Synacthen in 2017, Marathon/West "was *still* unable to obtain FDA approval." *Id.*

Based on that "persuasive evidence," the Bankruptcy Court found that Synacthen's challenges in overcoming regulatory barriers to market entry "broke the chain of causation" and Attestor "w[as] unable to prove that the harm [it] experienced was connected to and in fact caused by the Debtors' alleged anticompetitive conduct." *Id.* at 24. Because Attestor "failed to establish requisite [antitrust] standing to maintain a claim," *id.*, the court did not consider the many other reasons why the antitrust claims failed, *id.* at 19 ("If antitrust injury is not found, further inquiry is unnecessary." (quoting *West Penn*, 147 F.3d at 265)).

On appeal, Attestor presents three issues: (1) whether "the Bankruptcy Court appl[ied] the incorrect legal standard for antitrust standing or causation"; (2) whether "the Bankruptcy Court commit[ted] error when it held that [Attestor] did not establish antitrust standing or causation"; and (3) whether "the Bankruptcy Court commit[ted] error when it concluded that [Attestor]

abandoned their state law antitrust claims." D.I. 3 at 2.[5]  Attestor claims that the first of the three issues warrants certification of a direct appeal.

## ARGUMENT

A district court should certify a direct appeal only if (i) the appealed order "involves a question of law as to which there is no controlling decision of the [Third Circuit] or of the Supreme Court," (ii) the appealed order "involves a question of law requiring resolution of conflicting decisions," (iii) the appealed order "involves a matter of public importance," or (iv) "an immediate appeal . . . may materially advance the progress of the case." 28 U.S.C. § 158(d)(2)(A). None of those factors warrants direct appeal here.

Attestor cannot satisfy the first prong because two controlling Third Circuit decisions clearly articulate the applicable standard. Attestor fails to identify any cognizable conflict under the second prong; not surprisingly, the district courts in this circuit have applied that controlling Third Circuit law. Attestor does not demonstrate any special public importance either— particularly in light of the clear guidance and lack of confusion as to the applicable standard. And the fourth prong in fact weighs strongly *against* certification: the single issue Attestor addresses is not outcome-determinative (since the extensive record evidence shows Attestor cannot succeed under any standard) and the two issues Attestor does not address involve intensely fact-bound questions that will predominate on appeal.

## I.    There Is Controlling Third Circuit Precedent

Certification is appropriate under the first prong of 28 U.S.C. § 158(d)(2)(A) only if there is a "question of law" as to which there is "substantial ground for difference of opinion." *In re Physiotherapy Holdings, Inc.*, 2017 WL 6524524, at *6. "[M]ere disagreement with the ruling of

---

[5] Attestor has abandoned its RICO Act claims on appeal.

the bankruptcy court" is not enough; "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* When there is a controlling decision from the Third Circuit, no doubt exists. Such is the case here.

### A. The Bankruptcy Court Applied Controlling Third Circuit Law

As the Bankruptcy Court correctly held, the standard set forth in *City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256 (3d Cir. 1998) and *In re Wellbutrin XL Antitrust Litigation*, 868 F.3d 132 (3d Cir. 2017) governs the antitrust standing inquiry in this case. Order 19-21.

It is well settled that a private plaintiff wishing to bring antitrust claims must prove that it is "the proper party to bring a private antitrust action" for damages (here, administrative expenses), in light of the factors set forth by the Supreme Court in *Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519 (1983). Those factors require (among other things) proof of "the causal connection between the antitrust violation and the harm to the plaintiff," as well as "the directness of the injury." *Wellbutrin*, 868 F.3d at 164 n.54; *accord West Penn*, 147 F.3d at 264.

In *Wellbutrin* and *West Penn*, the Third Circuit held that it is "beyond fair dispute" "[t]hat a regulatory or legislative bar can break the chain of causation in an antitrust case." *Wellbutrin*, 868 F.3d at 165; *accord West Penn*, 147 F.3d at 268 ("[T]he interposition of the regulatory scheme and actions of the parties . . . [can] interfere[] with the chain of causation."). And when there is a regulatory barrier, the question is whether "it is more likely than not that [a competitor] *would* have" been permitted to compete under the regulatory scheme but for the allegedly anticompetitive conduct. *Wellbutrin*, 868 F.3d at 167. Eliminating any conceivable doubt, the Third Circuit explained that "[e]vidence showing that [a competitor] *may* have been able to obtain a license [and thus been able to compete under the regulatory scheme] does not meet that standard." *Id.*; *accord West Penn*, 147 F.3d at 267 (rejecting claim based on lack of antitrust injury where plaintiff failed

to demonstrate that a regulatory authority "would ever have granted [a competitor] the permission" to compete but for the allegedly anticompetitive conduct, and concluding that plaintiff's "claim[] that it would have benefited from competition it hoped would occur" did not suffice).[6]

*Wellbutrin* and *West Penn* control here. Both cases (like this one) arose in a context where competitors were barred from entering the market absent permission from a regulatory body. And in both cases (as here), the court concluded that the plaintiffs failed to produce evidence (or make allegations) demonstrating that it was more likely than not that a competitor *would have* been approved to compete but for the defendant's conduct. *Wellbutrin*, 868 F.3d at 166-67; *West Penn*, 147 F.3d at 265-67. The Bankruptcy Court applied that controlling standard—and the evidence clearly showed Attestor had not satisfied it. *See supra* 11-12.

## B. Attestor's Arguments To The Contrary Fail

Attempting to identify a "question of law" worthy of certification, Attestor mischaracterizes the Bankruptcy Court's decision and the governing precedent.

Attestor begins by misrepresenting the standard the Bankruptcy Court actually applied. Attestor says the Bankruptcy Court applied a standard under which a plaintiff must show that a competitor "drug would have *definitely* received FDA approval in a hypothetical world." Mot. 1, 8 (emphasis in original). But the italicized word appears nowhere in the Order, and the Bankruptcy Court did not require Attestor to demonstrate certainty that a competitor drug would have received approval in the but-for scenario. To the contrary, the Order makes clear that the court simply

---

[6] The existence of controlling Third Circuit precedent defeats certification under this prong. *See* 28 U.S.C. § 158(d)(2)(A)(i). But it bears noting that other courts of appeals are in accord. *See, e.g.*, *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 862 (D.C. Cir. 2008) (no antitrust injury because drug purchaser failed to show that "but for [the] alleged misuse of [a] patent, the FDA would have granted [a competitor] final approval"); *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 64 (1st Cir. 2016) (similar).

considered whether Attestor had met its burden under *Wellbutrin* to "produce evidence that it is *more likely than not* that [a competitor] *would have* obtained" regulatory approval. Order 21 (first emphasis added).

Attestor also tries to distinguish controlling Third Circuit law. Attestor argues that *Wellbutrin* does not govern because that case involved "a complete statutory bar under patent law," whereas here, "entry is permitted upon FDA approval." Mot. 12-13. That is misleading. The question in *Wellbutrin* was whether the statutory bar would have applied, just like the question in this case is whether the regulatory bar would have applied. The plaintiffs in *Wellbutrin* argued that the patent did not defeat their claim because, but for the alleged anticompetitive conduct, a competitor "would have obtained a license to [the competitor's] patent." 868 F.3d at 166. There was no absolute bar to obtaining a license, and it was in rejecting that factual argument that the court asked whether "it is more likely than not that [the competitor] *would* have obtained a license." *Id.* at 167 (emphasis in original). That was the standard the Bankruptcy Court applied.

Attestor likewise incorrectly suggests (at 11-12) that *West Penn* involved an absolute bar to competition. But there the Third Circuit recognized that a competitor *had* applied for the regulatory approval needed to compete with the defendant; it found no antitrust standing because "[t]here are no facts . . . which even permit us to speculate as to the likelihood of" the application being granted. 147 F.3d at 265. As the Bankruptcy Court explained, the regulatory barrier to entry in *West Penn* is analogous to the one at issue in this case—and the evidence showed that the regulatory barrier was even stronger for synthetic ACTH. *See* Order 20. And to the extent some district courts may have read *West Penn* narrowly (Mot. 10-12), those decisions all predate *Wellbutrin*—which "decline[d] to deviate from the well-reasoned path marked in [*West Penn*]"

and dispelled all doubt about the scope or vitality of the *West Penn* standard. *Wellbutrin*, 868 F.3d at 166.

Contrary to Attestor's assertion (at 9), the Bankruptcy Court did not "implicitly acknowledge there is no controlling decision" regarding the applicable standard. The Bankruptcy Court did address and distinguish *United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) (en banc). But it did so only because Attestor argued that *Microsoft* applied a different standard. Order 18. Needless to say, a court's decision to address and reject a litigant's reliance on inapposite case law from another circuit does not mean there is no controlling decision on point.

As the Bankruptcy Court correctly concluded, the *Microsoft* standard is irrelevant here. Because *Microsoft* involved "an equitable enforcement action" brought by the United States (which does not need to prove antitrust injury to bring an enforcement action), the D.C. Circuit was considering whether a *violation* occurred—not whether a private party suffered injury warranting damages. 253 F.3d at 79. And the D.C. Circuit emphasized that the lesser causation standard it articulated applies in "actions seeking injunctive relief." *Id.* (citation omitted). By its own terms, *Microsoft* does not apply to damages actions, as Attestor's own cited precedent recognized. *See In re Microsoft Corp. Antitrust Litig.*, 699 F. Supp. 2d 730, 748. (D. Md. 2010) (recognizing that the D.C. Circuit's decision held that the "contributed significantly" standard applied only in "equitable enforcement actions as opposed to an action for money damages") (cited in Attestor's Post-Trial Br., Bankr. D.I. 5553 at 18); Order 18 (same).[7] As the D.C. Circuit has made clear, it applies the same standard for antitrust injury as the Third Circuit in damages actions.

---

[7] The causation standard articulated in *Microsoft* does not even apply to all forms of equitable relief. *See* 253 F.3d at 80 (ordering divestiture, unlike merely enjoining a violation, requires "some measure of confidence that there has been an actual loss to competition that needs to be restored"); *cf. West Penn*, 147 F.3d at 269 (court "cannot" order a "remedy that . . . would require [it] to assume" a loss to competition).

*Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 862 (D.C. Cir. 2008) (no antitrust injury because "no reasonable juror could conclude that, but for [defendant's allegedly anticompetitive conduct], the FDA would have granted Andrx final approval" for a competing product).

## II.    No Conflicting Decisions Require Resolution By The Third Circuit

Attestor next argues that "[t]he Court must also certify a direct appeal because the Antitrust Order conflicts with district court decisions and requires resolution by the Third Circuit." Mot. 16 (citing 28 U.S.C. § 158(d)(2)(A)(ii)). Not so.

As discussed, the Third Circuit has provided exceedingly clear guidance on how the but-for standard applies in the context of regulatory barriers to market entry. Unsurprisingly, Attestor is unable to show confusion among courts in the wake of the Third Circuit's 2017 decision in *Wellbutrin*. Of the seven cases Attestor cites (at 16-19), five long predate *Wellbutrin*.[8] And the two that post-date *Wellbutrin* show no confusion as to the relevant standard.

*Perrigo Co. v. AbbVie Inc.* involved a straightforward application of *Wellbutrin*. The court simply held that, at the pleading stage, the plaintiffs could satisfy the *Wellbutrin* test. No. 2:20-cv-17560, 2021 WL 4551397, at *7 (D.N.J. Sept. 30, 2021) ("According to pleadings, it was Defendants' filing of the AndroGel 1% Litigation—not any additional defendants, patents, or exclusivity periods [resulting from the regulatory scheme]—that prevented Perrigo's entry into the testosterone market."). And *Roxul USA, Inc. v. Armstrong World Indus., Inc.* did not involve any

---

[8] *In re Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litig.*, No. 12-cv-711, 2013 WL 812143 (D.N.J. Mar. 5, 2013); *Shionogi Pharma, Inc. v. Mylan, Inc.*, No. 10-cv-1077, 2011 WL 3860680 (D. Del. Aug. 31, 2011); *In re Metoprolol Succinate Direct Purchaser Antitrust Litig.*, Nos. 06-cv-52, 06-cv-71, 2010 WL 1485328 (D. Del. Apr. 13, 2010); *Roxane Lab'ys, Inc. v. SmithKline Beecham Corp.*, No. 09-cv-1638, 2010 WL 331704 (E.D. Pa. Jan. 26, 2010); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517 (D.N.J. 2004).

regulatory barrier—and so did not even analyze the relevant issue. No. 1:17-cv-01258, 2019 WL 1109868 (D. Del. March 8, 2019).[9] There is no live conflict warranting certification.

### III. Public Importance Considerations Do Not Warrant Direct Appeal

Courts "interpret[] the 'public importance' prong of 28 U.S.C. § 158(d)(2)(A)(i) narrowly." *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5 (citation omitted). To satisfy this prong, the issues on appeal must "transcend[]" the litigants, and "[i]ssues tied to the facts of a particular case generally do not" meet that standard. *Id.* In fact, it is "doubtful" that a case in which "there is controlling court of appeals . . . precedent" could ever "involv[e] a matter of public importance." 1 Collier on Bankruptcy ¶ 5.06[4][b] (16th ed. 2021). Here, no confusion exists as to the relevant standard, and factual and fact-intensive issues will predominate on appeal. Resolution of this appeal likely will affect only the litigants.

Attestor's arguments to the contrary fail. Attestor says the case "implicat[es] the public interest" because it concerns the "pricing of a vital drug used to treat a dire condition in children." Mot. 14-15. But the FTC is empowered to protect those interests, and does not face the same antitrust injury requirements as private damages plaintiffs. And the FTC has already investigated Debtors' acquisition of Synacthen and settled those claims, almost five years ago now, in exchange for Debtors paying a $100 million fine and sublicensing Synacthen to Marathon/West. Order 10. Persuasive evidence also showed that Debtors had not blocked competitors from seeking approval

---

[9] Attestor argues (at 19) that the *Roxul* court applied "the *Microsoft* standard." True, *Roxul* quotes from *United States v. Dentsply Int'l, Inc.*, 399 F.3d 181, 187 (3d Cir. 2005), which in turn quotes *Microsoft*. But the standard discussed relates to sufficient proof *of a violation* in a monopolization case, not whether the violation caused antitrust injury. 2019 WL 1109868, at *17 ("Unlawful maintenance of a monopoly is demonstrated by proof that a defendant has engaged in anti-competitive conduct that reasonably appears to be a significant contribution to maintaining monopoly power." (quoting *Dentsply Int'l*, 399 F.3d at 187)). Attestor excises the first ten words of that quote to misleadingly suggest otherwise.

for Synacthen or another synthetic ACTH; it was the circumstances particular to synthetic ACTHs that had prevented firms from obtaining FDA approval. *See supra* 11-12. Attestor's lingering profit motive as a claims purchaser hardly implicates the public interest. Attestor also argues that the legal question it asserts "is central to a wider debate over antitrust law[]" and that "district courts in this circuit have frequently grappled with antitrust standing in FDA-approval cases." Mot. 15-16. But with controlling Third Circuit precedent and without any conflicting decisions to resolve, it is hard to see any broader importance of the issue. This appeal concerns only the Bankruptcy Court's fact- and case-specific application of those standards.

## IV. Direct Appeal Will Not Materially Advance The Progress Of The Case

Attestor finally argues that certification will materially advance the progress of the case because "[t]he antitrust claim at issue here is momentous . . . financially and to the state of antitrust law." Mot. 19. But there is nothing "extraordinary or urgent about this situation that recommends departing from the standard appellate process." *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5 (citation omitted). As courts have explained, "without sufficient reason for direct appeal, [the certification] process can actually lengthen rather than expedite appeal," as "[t]he matter is primed for briefing before this Court; whereas, the Third Circuit must first review and accept a certification request before the appeal can proceed in that Court." *In re Conex Holdings*, 534 B.R. at 611 (citations omitted).

Attestor also claims certification is warranted because "either side will almost certainly appeal any ruling by this Court to the Third Circuit." Mot. 20. But "courts have routinely held that the desire to skip one appellate level is not grounds for certification," even if a litigant "predict[s] that the parties will likely appeal an adverse ruling by the District Court." *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *4 (collecting cases). Otherwise, "[a]ny litigant could"

make such a prediction, and "'Section 158(d)(2)(A)[iii] would effectively eliminate the district court from the bankruptcy review process altogether.'" *Id.* (citation omitted).

Properly applied, this factor weighs strongly *against* certification. Fact issues will predominate on appeal. In addition to the legal standard, Attestor intends to challenge the Bankruptcy Court's assessment of the evidence at trial. D.I. 3 at 2 (statement of issues). That will "implicate the particular circumstances of th[e] case" and is not—as Attestor implicitly concedes—"[a] pure legal question[] warranting direct certification." *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) (citing *Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007)).

The single issue Attestor raises in its certification motion is not dispositive either. Even under the inapplicable standard Attestor prefers, the evidence presented at trial makes clear that Debtors' acquisition of Synacthen was *not* "reasonably capable of contributing significantly to a defendant's continued monopoly power." *Microsoft*, 253 F.3d at 79. The evidence showed that any lack of competition was not because Debtors held the rights to Synacthen, but because synthetic ACTHs are not well suited to overcome the significant regulatory barriers. That Debtors held rights to one synthetic ACTH was largely beside the point. Competitors successfully developed other synthetic ACTH products—only to abandon their efforts to obtain FDA approval due to those barriers. Order 23. And even though Marathon/West was sublicensed to develop Synacthen in 2017, it still has not obtained FDA approval. *Id.* at 22-23. Put simply, the outcome would be the same under either legal standard.

Certification would also be an inefficient use of judicial resources. This Court has over a dozen appeals arising out of Debtors' Chapter 11 bankruptcy proceedings now pending on its docket. Attestor itself has filed separate appeals, including one involving prepetition antitrust

claims that could be impacted by the outcome of this appeal.  *See* Case No. 21-cv-01093-LPS.

This Court is already familiar with these related appeals and is best positioned to resolve them.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Attestor's Motion.

Dated: February 18, 2022

/s/ Michael J. Merchant
**RICHARDS, LAYTON & FINGER, P.A.**
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Amanda R. Steele (No. 5530)
Brendan J. Schlauch (No. 6115)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:            collins@rlf.com
                      merchant@rlf.com
                      steele@rlf.com
                      schlauch@rlf.com

- and -

Melissa Arbus Sherry (*pro hac vice*)
James A. Tomberlin (*pro hac vice*)
Andrew Sorkin (*pro hac vice*)
**LATHAM & WATKINS LLP**
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:      (202) 637-2200
Facsimile:      (202) 637-2201
Email:            melissa.sherry@lw.com
                      james.tomberlin@lw.com
                      andrew.sorkin@lw.com

- and -

George A. Davis (*pro hac vice*)
George Klidonas (*pro hac vice*)
Anupama Yerramalli (*pro hac vice*)
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, New York 10020
Telephone:      (212) 906-1200
Facsimile:      (212) 751-4864
Email:            george.davis@lw.com
                      george.klidonas@lw.com
                      andrew.sorkin@lw.com
                      anu.yerramalli@lw.com

- and -

Matthew W. Wolf (pro hac vice)
Laura S. Shores (*pro hac vice*)
Sonia Kuester Pfaffenroth (*pro hac vice*)
**ARNOLD & PORTER**
 **KAYE SCHOLER LLP**
601 Massachusetts Ave., NW
Washington, DC 20001
T: (202) 942-5000

- and -

D. Eric Shapland (*pro hac vice*)
**ARNOLD & PORTER
 KAYE SCHOLER LLP**
777 South Figueroa St., 44th Floor
Los Angeles, California 90017
T: (213) 243-4000

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rules 8013(f) and 8015(h) of the Federal Rules of Bankruptcy Procedure, I hereby certify that this document complies with the requirements of Bankruptcy Rule 8013(f) because it contains 5,198 words, excluding the parts exempted by Federal Rule of Bankruptcy Procedure 8015(g), as counted by Microsoft Word.

*/s/ Michael J. Merchant*
Michael J. Merchant